# EXHIBIT C

## PHYSICIAN EMPLOYMENT AGREEMENT

This Physician Employment Agreement ("**Agreement**") is effective as of the date of last signature hereto ("**Effective Date**") by and between BayCare Medical Group, Inc., a Florida not-for-profit corporation ("**Employer**") and Tara Loux, M.D. ("**Physician**").

## RECITALS

WHEREAS, Employer operates a medical practice in the State of Florida;

WHEREAS, Physician is licensed to practice medicine in the State of Florida or will be licensed to practice medicine in the State of Florida as of the Commencement Date, as defined in Section 2 (Term of Employment);

WHEREAS, Employer desires to engage Physician to provide services on its behalf, and Physician desires to provide such services in accordance with the terms and conditions of this Agreement; and

WHEREAS, Physician's services rendered under this Agreement are an important contribution to the achievement of Employer's charitable purpose because the services satisfy the health care needs, and thereby improve the quality of health care, in the communities that Employer serves.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained and intending to be legally bound hereby, Employer and Physician agree as follows:

1. **Physician Benefits**.

   a. **Compensation**. Throughout the Term of the Agreement, Employer shall pay Physician compensation as set forth on <u>Schedule 1(a)</u> (Compensation), which is attached hereto. Upon ninety (90) days advance written notice to Physician, Employer may amend and/or replace <u>Schedule 1(a)</u> (Compensation) with a new compensation schedule that has been approved pursuant to a formal resolution adopted by a majority of Employer's Board of Directors.

   b. **Paid Time Off**. Notwithstanding anything to the contrary within Employer's Policies (as defined in Section 3(f) (Compliance with Laws and Policies)), Physician shall be provided with thirty (30) days of paid time off each year, during the first three Employment Years (as defined in <u>Schedule 1(a)</u> (Compensation)), and such paid time off may not be carried over into a subsequent Employment Year. Employer must approve in advance any days on which Physician uses such paid time off.

   c. **Professional Expenses**. Employer shall reimburse Physician for properly documented professional expenses, provided that the total amount of such expenses in any given calendar year does not exceed Two Thousand and No/100 Dollars ($2,000.00) (or a pro-rated portion thereof if Physician provides less than one (1) calendar year of services and/or if Physician's status (e.g., associate status or member status) changes during a calendar year). Employer must

H:\SHARES\BayVista\Legal\Physician Contracting\Employment Agreements\HealthPoint\Loux\HMG_Loux_Physician Employment Agreement (SLC)_04.24.2015.docx

approve in advance and in writing: (i) the activities for which the expenses are incurred, and (ii) the expenses that Physician incurs. Physician must submit requests for reimbursement in accordance with the Policies, as defined in Section 3(f) (Compliance with Laws and Policies).

        d.     **Practice Location**. Employer shall furnish Physician with practice space, administrative help, and such other personnel, facilities, and services as are suitable to Physician's position and adequate for the performance of Physician's duties hereunder, as determined from time to time by Employer in its discretion ("**Practice Location**").

        e.     **Telecommunication Expenses**. Employer shall fund an amount determined by the Policies, as defined in Section 3(f) (Compliance with Laws and Policies), for Physician to secure telecommunication coverage, with such coverage to be held in the name of the Physician, at the Physician's discretion.

        f.     **Health Insurance and Benefits**. Employer shall provide a health insurance policy for Physician with such insurance company or companies as Employer may select in its sole discretion, subject to eligibility requirements imposed by such policies. The costs, scope of coverage, dependent coverage, and coverage limits associated with any such health insurance policies shall be dependent upon Employer's then-current benefit plan. Physician will also receive all other standard employee benefits pursuant to Employer's then-current benefit plans.

        g.     **Professional Liability Insurance**. Employer shall provide and pay directly the expense of professional liability insurance coverage for Physician while Physician is performing services under this Agreement. The coverage limits for such professional liability insurance shall be the greater of $250,000/$750,000 or the coverage limits required by Florida law.

        h.     **Tail Coverage**. Upon termination or expiration of this Agreement for any reason, Physician shall obtain extended reporting professional claims-made liability insurance coverage ("**tail coverage**"), or such other industry accepted arrangement that is approved by Employer in advance and in writing, which covers claims relating to the services that Physician rendered pursuant to this Agreement ("**Coverage**"). Such Coverage must have minimum liability limits equal to those most recently in effect for the professional liability insurance that Employer maintained immediately prior to the date of expiration or termination of this Agreement. Notwithstanding the foregoing, Employer shall pay fifty percent (50%) of the cost of the Coverage if this Agreement is terminated by either party pursuant to Section 7(a) (Voluntary Termination) and Physician has been employed by Employer for at least three (3) consecutive years; Employer shall pay seventy- five percent (75%) of the cost of the Coverage if this Agreement is terminated by either party pursuant to Section 7(a) (Voluntary Termination) and Physician has been employed by Employer for at least five (5) consecutive years; and Employer shall pay one hundred percent (100%) of the cost of the Coverage if this Agreement is terminated by either party pursuant to Section 7(a) (Voluntary Termination) and Physician has been employed by Employer for at least ten (10) consecutive years. Physician and Employer shall each pay the insurance carrier directly for its portion of the Coverage. If, for any reason, Physician fails to pay the insurance carrier directly for his or her portion of the Coverage, Physician will not have tail coverage and will be deemed to have materially breached this

Agreement, and Employer shall be entitled to all remedies to recoup such amounts from Physician. In such circumstance, Physician shall pay all interest, costs, and expenses (including, without limitation, reasonable attorneys' fees and paralegal fees and expenses) that Employer incurs in relation to such breach, the recoupment of the premium amounts, and the Coverage.

2.    **Term of Employment**. Physician's obligation to provide services under this Agreement shall commence on the later of: (a) ~~September 14, 2015~~ , or (b) the date on which Physician completes all credentialing, licensing, and/or privileging (if applicable) requirements to the satisfaction of Employer that are necessary in order for Physician to provide the services under this Agreement ("**Commencement Date**"), and shall expire two (2) years from the Commencement Date ("**Initial Term**"). After the Initial Term of this Agreement, this Agreement shall be automatically renewed for successive one (1) year periods (each, a "**Renewal Term**"), unless either party delivers written notice to the other, not later than one hundred eighty (180) days prior to the expiration of the Initial Term or any Renewal Term that such party does not intend to renew this Agreement. The Initial Term and any Renewal Term(s) shall be collectively referred to as the "**Term**." Notwithstanding the foregoing, the parties may terminate this Agreement prior to the expiration of the Term, as provided in Section 7 (Termination).

3.    **Duties and Performance**.

a.    **Duties and Performance Standards**. Beginning on the Commencement Date and continuing throughout the Term of this Agreement, Physician shall perform the duties for Employer that are set forth in this Agreement and on Schedule 3(a) (Duties), which is attached hereto, and as such duties may be modified by Employer from time-to-time (whether verbally or in writing). However, any such modifications will be applicable to all physicians of Employer having similar duties and will not materially affect the scope of Physician's duties. Physician shall perform such duties in accordance with certain quality goals, which will be established from time to time by Employer and provided to Physician in writing. Physician, moreover, shall perform such duties faithfully, to the fullest extent of Physician's ability, and in accordance with recognized standards of the medical profession, and shall, at all times, promote and support the interests and mission of Employer in all respects, including, but not limited to, being proactive relative to Employer's development, working cooperatively with Employer's employees, being empathic with patients, and assisting in building an overall positive attitude.

b.    **Schedule and Location**. Throughout the Term of this Agreement, Physician shall provide, on average, a minimum of thirty-seven point six (37.6) hours of patient care services each week, unless otherwise specifically approved by Employer. Such requirement shall include, but not be limited to, providing services at the Practice Location or Health Care Facility (as defined in Section 3(h) (Medical Staff Membership)) and providing unrestricted call coverage at such times and at such locations as determined by Employer in its discretion. Pursuant to this Agreement, Physician agrees to provide seventy-nine (79) days of pediatric surgery call coverage each year to Health Care Facility, as hereinafter defined, on behalf of Employer.

c.    **Participation in BayCare Physician Partners**. During the Term of this Agreement, Physician agrees to apply for participation in BayCare Physician Partners, LLC (or such other Employer designated network) and comply with the conditions of participation

established by that organization and which are disclosed in writing to Physician on or before the Commencement Date of the date of this Agreement.

        d.     **Quality Initiatives**. Physician acknowledges and agrees that Physician shall support: (i) Employer, (ii) BayCare Health System, Inc., (iii) BayCare Physician Partners, LLC (or such other Employer designated network), and (iv) BayCare Health System, Inc.'s other hospitals, facilities, affiliates, and subsidiary companies ((ii), (iii), and (iv), collectively, "**BayCare**") in the: (a) coordination of care and overall patient care management across all facilities, specialties, and throughout the patient continuum of care, and (b) adoption, use, and integration of electronic medical records, health information exchange, and quality of care/enhanced care initiatives as such initiatives are introduced throughout Employer and BayCare.

        e.     **Exclusive Employment**. During the Term of this Agreement, Physician shall engage in the practice of medicine solely as an employee of Employer. Physician shall devote Physician's entire professional time and efforts as a doctor of medicine solely to the medical practice and affairs of Employer. Any professional activities related to the practice of medicine outside of the office and/or hospital practice for which Physician is compensated in any form, including, but not limited to, speaking honorariums, drug studies, talks, health fairs, consulting, testimony, and directorships (collectively, the "**Outside Activity**"), must: (i) be approved in advance in writing by Employer, (ii) be consistent with good medical practice, (iii) not interfere with Physician's duties hereunder, (iv) not conflict with the Policies, and (v) be clearly reported as to the nature of the activity and the compensation to be derived therefrom at least ten (10) days in advance of the scheduled date of the Outside Activity. Employer shall not unreasonably refuse or delay approval of any Outside Activity. Any compensation received by Physician for approved Outside Activities shall be paid directly to Physician from the applicable third party as a 1099 independent contractor, and Physician shall be responsible for all taxes, withholding, and other liabilities associated with such amounts; provided, however, any compensation for approved Outside Activities received from BayCare or Employer will be paid directly to Employer and Physician will be compensated as a W-2 employee through Employer's payroll system (with applicable deductions for taxes and withholding). If Physician engages in an approved Outside Activity, Physician hereby agrees to indemnify, reimburse, defend, and hold harmless Employer, its agents, employees, representatives, affiliates, subsidiaries, parent corporations, principals, directors, and officers, of and from all debts, demands, actions, causes of action, suits, damages, losses, fees, sums of money, controversies, agreements, promises, claims, obligations, and all liabilities whatsoever (collectively, the "**Claim**") that may arise as a result of Physician's participation in the approved Outside Activity. In the event that a Claim is made against Employer relating to an approved Outside Activity, Employer shall notify Physician of the Claim. After receipt of this notice, Physician shall either: (i) make satisfactory arrangements with the claimant to pay or otherwise resolve the Claim to the satisfaction of Employer, or (ii) if the Claim is not resolved within a time period deemed acceptable by Employer, engage legal counsel satisfactory to Employer, at Physician's expense, to defend Employer from and against said Claim. If it is determined that the Claim is owed, Physician shall pay the debt or obligation in full immediately. Subject to the limitations set forth in Section 9(a) (Non-Competition) hereof, Physician may invest or trade in any securities of any type or other form of investments, including real estate, without

Employer's written approval so long as the investment or trade does not require any active participation or services on the part of Physician.

      f.    **Compliance with Laws and Policies**. At all times during the Term of this Agreement, Physician will comply with and adhere to all federal, state, and local laws, rules, and regulations applicable to the practice of medicine. In rendering professional services and in all other aspects of Physician's employment, Physician will comply with all reasonable policies, procedures, standards, compliance programs, and regulations that BayCare and/or Employer establishes from time to time (collectively, the "**Policies**"), provided that the same do not violate applicable law or professional ethics and are not inconsistent with the express terms of this Agreement. Employer or BayCare may make changes to the Policies at any time. Physician will comply with all obligations regarding repayment of government backed student loans. In addition to any termination rights under Section 7 (Termination), Employer shall be entitled to immediately suspend Physician in the event Physician fails to comply with any Policies and/or Physician engages in any behavior or activity that Employer deems to be detrimental to patient care and/or treatment or to the overall reputation, character, or standing of Employer or BayCare.

      g.    **Additional Expenditures**. Except as otherwise provided in this Agreement, and except as Employer otherwise specifically approves in advance in writing, Physician is responsible for and must pay for all expenses that Physician incurs in performing Physician's duties under this Agreement.

      h.    **Medical Staff Membership**. If applicable, Physician will use Physician's best efforts to obtain and maintain medical staff membership at the hospitals, ambulatory surgical centers, and/or other medical facilities designated by Employer (collectively, the "**Health Care Facility**"). Physician will respond promptly, accurately and fully to all requests for information from the Health Care Facility.

      i.    **Qualifications**. At all times during the Term of this Agreement, Physician will: (i) be qualified to provide services to beneficiaries of the Medicare and Medicaid programs (and will accept assignment) and to members of other third party payor programs that Employer designates; (ii) be qualified to practice medicine in Florida and to prescribe controlled substances, both without restriction; and (iii) maintain professional licensure without restriction. Physician shall also obtain Board certification in an applicable field of medicine within two (2) years of becoming eligible for such Board certification and shall continuously maintain such Board certification at all times thereafter. Physician must initially obtain such Board certification within two (2) consecutive attempts for Board certification, unless otherwise specifically approved by Employer in writing.

      j.    **Representations**.    Physician hereby represents and warrants to Employer that he/she has the legal right to enter into this Agreement and perform the duties hereunder, and that he/she is not subject to or bound by any non-compete, restrictive covenant, or other agreement that would impede or interfere in the performance of his/her duties hereunder and/or otherwise restrict Physician's ability to enter into this Agreement. Physician will indemnify, defend, and hold Employer harmless from and against any breach of this Section 3(j) (Representations).

k.    **Requirement of Physician to Notify Employer of any Detrimental Professional Information or Violation of Contract Rules or Policies**.    During the Term of this Agreement, Physician shall notify Employer immediately, or as soon as is possible thereafter, in the event that:

(i)    Physician's license to practice medicine in any jurisdiction is suspended, revoked, or otherwise restricted;

(ii)    a complaint or report concerning Physician's competence or conduct is made to any state medical or professional licensing agency, including without limitation, the Medical Board of Florida;

(iii)    Physician's privileges at any hospital, health care facility, or under any health care plan are denied, suspended, restricted, or terminated;

(iv)    Physician's controlled substance registration certificate (issued by the Drug Enforcement Administration) if any, is being, or has been, suspended or revoked;

(v)    Physician's participation as a Medicare or Medicaid provider is under investigation or has been terminated;

(vi)    there is a material change in any of the information the Physician has provided to Employer concerning Physician's professional qualifications or credentials;

(vii)    Physician's conviction of a felony, a crime related to the practice of medicine, a crime of moral turpitude, or a misdemeanor that would negatively impact Physician's provision of services pursuant to this Agreement; or

(viii)    Physician is notified of a breach of a government backed student loan obligation.

4.    **Third Party Payment**.  Physician appoints Employer as Physician's agent for, and gives Employer the exclusive right to establish a procedure to negotiate and to execute on behalf of Physician, all contracts providing for payment for services that Physician renders pursuant to this Agreement with individual patients, third party payment programs, health maintenance organizations, prudent purchaser arrangements, alternate health care delivery systems, insurers, employers, and other payors (collectively, "**Payors**"). For all such services that Physician renders, directs, or supervises, Physician shall prepare all records and other data as may be necessary to obtain payment/reimbursement from all Payors.  Physician will comply with all applicable requirements and guidelines of the Payors.  Physician will not refuse to accept patients in need of medical care solely because such patients cannot pay for the services.  The obligations in this Section 4 (Third Party Payment) will survive the termination or expiration of this Agreement.

5.    **Fees, Billing, and Collection**.  Physician, by virtue of this Agreement, appoints Employer as Physician's sole and exclusive agent to bill and collect fees for all services that Physician renders in the course of Physician's employment.  Except as provided in Section 3(e)

(Exclusive Employment) with respect to approved Outside Activities, all fees, compensation, monies, and other things of value received or realized as a result of the rendition of Physician's services belong to Employer. In the event Physician receives any such fees, compensation, monies, or other things of value for services rendered while an employee of Employer, whether received by Physician during the Term of this Agreement or at any time thereafter, Physician immediately shall deliver to Employer such fees, compensation, monies, or other things of value (or the equivalent cash value), and Physician expressly agrees that Physician will execute such documents, endorse such checks, and take such other steps as shall be required to vest fully in Employer the right, title, and possession of all such fees, compensation, monies, and other things of value. The obligations in this Section 5 (Fees, Billing, and Collection) will survive the termination or expiration of this Agreement.

6. **Limitations on Actions**. Physician has no actual, apparent, or implied authority to enter into any contract or agreement binding upon Employer or to create any obligation on the part of Employer unless Employer specifically authorizes such action in writing in advance. Employer will consult with Physician concerning matters that affect Physician, but Employer will have the final decision-making authority in administrative and operational matters, including, without limitation, the exclusive authority to establish a procedure for designating the identity of the professional employee who will treat each patient. Employer has contracted with Physician to provide professional and medical skills and to exercise professional judgment in providing medical services. Employer has no right to control Physician in the performance of those duties involving the traditional responsibility of a doctor to his or her patients, and Physician shall exercise full responsibility for the diagnosis and treatment of individual patients and such other facets of patient care as shall come within Physician's duties under this Agreement. Employer, however, shall have the right to establish the standards of practice for the Physician and the Practice Location, including, but not limited to: (a) patient quality and safety measures, (b) coordination of patient care across all BayCare facilities, specialties, and throughout the continuum of care, and (c) the Policies, as defined in Section 3(f) (Compliance with Laws and Policies).

7. **Termination**.

a. **Voluntary Termination**. Either party may terminate this Agreement for any reason or for no reason upon one hundred eighty (180) days advance written notice to the other party.

b. **Termination for Cause**. Either party may terminate this Agreement for cause effective thirty (30) days after the terminating party delivers to the non-terminating party a written notice of termination, unless the for cause event has been cured to the reasonable satisfaction of the terminating party within such thirty (30) day period. The grounds for which Employer may terminate "for cause" include, without limitation, the occurrence of the following events:

(i) except for an approved Outside Activity as set forth in Section 3(e) (Exclusive Employment), if Physician engages in the practice of medicine other than as an employee of Employer;

(ii) if Physician fails or refuses to comply with the Policies;

(iii)     if Physician fails or refuses to perform faithfully and diligently Physician's duties under the terms of this Agreement, fails or refuses to comply with any of the covenants Physician makes or has made, or otherwise breaches any of the terms of this Agreement;

(iv)     if Physician acts in an unprofessional, unethical, immoral, or fraudulent manner, or if the Centers for Medicare and Medicaid Services, the Federal Drug Enforcement Agency, Agency for Health Care Administration, the Florida Department of Health, any predecessor or successor agency, or any regulatory entity with jurisdiction, determines that Physician has engaged in conduct which warrants discipline;

(v)     if applicable, if Physician fails or refuses to pursue diligently or to maintain without restriction the satisfaction of all requirements for admission as a member of the medical staff at Health Care Facility, for any reason;

(vi)     if, after Physician becomes a member of the staff of a Health Care Facility, Physician's position as a member of the staff of the Health Care Facility is restricted, suspended, or revoked for any reason;

(vii)     the uninsurability of Physician as evidenced by the refusal of reputable insurance carriers providing professional liability insurance coverage in the State of Florida to provide such coverage at commercially reasonable rates, either on behalf of Physician or Employer with respect to Physician's services;

(viii)     if Physician engages in any conduct which, in the good faith opinion of Employer, has had or may be expected to have a detrimental effect upon the reputation, character, or standing of Employer or BayCare, or if Physician commits any act of fraud, malice, or dishonesty in any dealings with Employer or with Employer's employees, agents, independent contractors, assets, or patients; or

(ix)     if Physician fails to obtain and/or maintain Board certification in accordance with the terms of Section 3(i) (Qualifications) and/or in accordance with the Policies.

c.     **Immediate Termination**.     Employer may terminate this Agreement effective immediately upon Employer's delivery to Physician (or Physician's estate) of a written notice of termination upon the occurrence of any of the following events:

(i)     if Physician fails or is unable to perform Physician's duties hereunder for a continuous period of more than five (5) days, unless Employer approves such absence in advance in writing or physician provides documentation satisfactory to Employer of the need for an unplanned absence;

(ii)     if Physician is convicted of a felony, a crime related to the practice of medicine, a crime of moral turpitude, or a misdemeanor that would negatively impact Physician's provision of services pursuant to this Agreement;

(iii)    if Physician's license to practice medicine in the State of Florida, or any of Physician's other qualifications listed in Section 3(i) (Qualifications) of this Agreement are lost, suspended, or restricted in any way;

(iv)    if at any time Employer has reasonable cause to believe that Physician is physically or mentally impaired due to alcohol or drug use, or that Physician is engaging in any conduct which, in the opinion of the Employer, constitutes sexual harassment or abuse against co-employees, patients, or affiliates of Employer;

(v)    if Physician is excluded, whether temporarily or permanently, from participation in Medicare, Medicaid, or any other federal or state health care program; or

(vi)    if Physician fails to maintain a government backed student loan in good standing.

d.    **Effect of Termination**.  Upon expiration or termination of this Agreement, and subject to any applicable set-offs, withholds, and/or deductions by Employer, Employer's only obligation under this Agreement will be to pay Physician any compensation Physician has earned under the provisions of Section 1 (Physician Benefits) of this Agreement up to the effective date of Physician's termination or expiration of employment to the extent Employer has not already paid the earned compensation.  Physician will have no interest in accounts receivable, physical assets, inventory, patient medical records, personnel, or any other assets of Employer.

e.    **Non-Disparagement**.  Physician and Employer will refrain from making any material untruthful or disparaging statements or remarks concerning Physician, BayCare, or Employer from and after the termination or expiration of this Agreement.  The obligations in this Section 7(e) (Non-Disparagement) shall survive the termination or expiration of this Agreement, and the disparaged party shall be entitled to relief as provided in Section 10 (Remedies) hereof in the event of a breach of this provision.

8.    **Patients and Records**.  All files and records (whether print, electronic, or otherwise) of all patients are the sole and exclusive property of Employer, and upon the expiration of this Agreement or the termination for any reason of Physician's employment, Physician will return to Employer all files and records of any patient then in Physician's possession or under Physician's control, and Physician shall not have any ongoing right to access or use such files and/or records.  Notwithstanding anything to the contrary herein, upon the expiration or termination of this Agreement, Physician shall be permitted to reasonably access such records for purposes related to licensure, maintenance of certification, and/or malpractice.  Employer will maintain the files and records in accordance with Florida law, including without limitation provisions that pertain to confidentiality.  The obligations in this Section 8 (Patients and Records) shall survive the termination or expiration of this Agreement.

9.    **Restrictive Covenants**.

a.    **Non-Competition**.  In order to support Employer's legitimate business interests of protecting: (i) the valuable Confidential Information (as defined in Section 9(c)

(Confidentiality)) that was provided to Physician by Employer throughout the Term of this Agreement, (ii) Employer's investment of substantial time, money, and effort in helping Physician develop a physician practice and attract patients, (iii) the patient goodwill associated with Employer's development of Physician's practice, and (iv) Employer's investment of specialized training provided by Employer to Physician, Physician hereby agrees that, during the Term of this Agreement and for a continuous period of eighteen (18) months thereafter, Physician, individually or jointly with others, for the benefit of Physician or any third party, directly or indirectly, whether for Physician's own account or for that of any other person or entity, shall not own or hold any ownership or voting interest in: (a) any person or entity engaged in the practice of medicine or a business which is the same as or similar to the business of Employer or BayCare and which is located anywhere within an eight (8) mile radius of St. Joseph's Hospital, Inc., 3001 W. Dr. Martin Luther King, Jr. Blvd., Tampa, Florida 33607 ("**Non-Compete Geographic Area**"); or (b) a medical practice or any business which competes in any manner whatsoever with the business of Employer or BayCare and which is located anywhere within the Non-Compete Geographic Area. In addition, Physician shall not act as an officer, director, employee, partner, independent contractor, consultant, principal, agent, proprietor, or in any other capacity for, or lend any assistance (financial, managerial, professional or otherwise) or cooperation to, or perform any services for, any person or entity described in (a) or (b) regardless of whether Physician owns or holds any ownership or voting interest in such person or entity. Notwithstanding the foregoing restrictions, Physician may own an interest of five percent (5%) or less in any corporation required to file periodic reports with the SEC so long as Physician does not perform services or lends any professional or managerial assistance to any such corporation.

b.  **Non-Solicitation**. During the Term of this Agreement and for a continuous period of two (2) years thereafter, Physician shall not in any way, directly or indirectly, actively or passively, on Physician's behalf or on behalf of or in conjunction with any other person: (i) solicit or divert away (or attempt to solicit or divert away) any patient or customer of Employer, including, but not limited to, by sending a notification of change of practice/employer to Employer's patients, except as permitted or required by applicable law or professional regulations or (ii) solicit or divert away (or attempt to solicit or divert away) or accept for employment or other service arrangement any employee of Employer or BayCare, or request or induce any employee of Employer or BayCare to terminate such person's employment with Employer or BayCare, and accept employment or other service arrangement with Physician or another person.

c.  **Confidentiality**. During the Term of this Agreement and after termination or expiration thereof, Physician will not use for Physician's personal gain or disclose any Confidential Information to any person or entity without the prior written consent of Employer. "**Confidential Information**" includes, but is not limited to, knowledge that Physician obtains from Employer during the course of providing professional services, such as knowledge about patient lists or long or short term plans; marketing or educational studies; techniques or materials designed or used to expand the client base; computer software or other methodologies used to calculate amount of payments due under a capitated payment system; computer software or other methodologies used to assign clients to providers; provider manuals used to instruct the providers on efficient provision of services; forms used in the provision of services, billing, or record keeping; computer software or other methodologies used to perform utilization management, quality assurance, quality improvement, care management, or similar activities; and knowledge or data used

in negotiations for contracts to provide medical services. Confidential Information does not include information in the public domain unless Physician causes the information to be public.

      d.    **Consideration**. The parties acknowledge and agree that Employer has entered into this Agreement in reliance on the covenants of Physician contained in this Section 9 (Restrictive Covenants) (collectively, the "**Restrictive Covenants**").

      e.    **Assignment**. Any permitted assignee or successor in interest of Employer may enforce the Restrictive Covenants contained in this Section 9 (Restrictive Covenants).

      f.    **Survival**. The Restrictive Covenants contained in this Section 9 (Restrictive Covenants), the remedies described in Section 10 (Remedies) of this Agreement, and the release provisions in Section 11 (Release from Non-Competition Covenant) of this Agreement shall survive the expiration or termination of this Agreement.

      10.    **Remedies**. The parties consider the restrictions contained herein to be reasonable. However, if a court of competent jurisdiction makes a final decision that the restrictions are unenforceable because of scope, duration, or territory encompassed by the undertakings of Physician, then the parties consent to such limitations on scope, duration, or territory as a court of competent jurisdiction adjudicates finally to be enforceable. If Physician violates any portion of the restrictive covenants contained in Section 9 (Restrictive Covenants), the term of the restrictive covenants shall extend beyond the term described in this Agreement for the length of time that is equal to the period of non-compliance. Physician expressly acknowledges that each and every breach of Section 7(e) (Non-Disparagement) and/or Section 9 (Restrictive Covenants) of this Agreement by Physician will result in irreparable and continuing injury to Employer. Therefore, in the event of each and every breach by Physician, Physician acknowledges that Employer, by an appropriate action instituted in any court of competent jurisdiction, will be entitled to either:

      a.    Specific performance or injunctive relief without necessity of posting bond (unless waiver of bond is prohibited by law) and without further proof of irreparable injury; or

      b.    The right to recover from Physician liquidated damages. Employer and Physician mutually acknowledge and confirm that it would be extremely difficult, if not impossible, to determine the exact amount of damages that would be suffered by Employer as a result of a breach by Physician of Section 7(e) (Non-Disparagement) and/or Section 9 (Restrictive Covenants). Therefore, for the purpose of liquidating the amount of such damages, and not as a penalty, Employer and Physician mutually acknowledge that, in the event of such a breach by Physician, the damages caused are fixed, liquidated, and determined to be equivalent to one (1) year of Physician's Salary (as defined on Schedule 1(a) (Compensation)); provided that this amount shall be assessed one (1) time only. Physician agrees that this liquidated damages provision is fair and reasonable and that, if Physician breaches Section 7(e) (Non-Disparagement) and/or Section 9 (Restrictive Covenants), Physician will pay the entire amount of the liquidated damages to Employer upon written demand from Employer. If Physician fails to comply with the written demand of Employer, then Employer has the right to recover from Physician the aggregate amount of the liquidated damages, plus interest from the date of Employer's demand until paid in full, by an appropriate

action instituted in any court of competent jurisdiction. This remedy is in addition to any remedies provided by law.

11. **Release from Non-Competition Covenant**. Subsequent to expiration or termination of this Agreement, Physician shall be released from the restrictions under Section 9(a) (Non-Competition) hereof if: (a) Employer terminates this Agreement pursuant to Section 7(a) (Voluntary Termination); or (b) Physician pays to Employer an amount equal to one (1) year of Physician's Salary (as defined on Schedule 1(a) (Compensation)).

12. **Legal Developments**. This Agreement shall terminate immediately upon delivery of written notice by one party to the other party in the event that counsel for the terminating party determines in good faith that the execution, delivery, or performance of this Agreement, or the performance of any material provision of this Agreement, or of any matter contemplated in this Agreement, either separately or in conjunction with other activities, creates a substantial risk of being deemed in violation of any applicable legal or regulatory requirement; provided, however, that if such determination applies only to certain provisions of this Agreement, such determination shall not affect the duty of the parties to perform the remaining provisions of this Agreement unless the failure to perform the affected provisions would defeat the essential purposes of this Agreement.

13. **Notices**. Any notice required or permitted to be delivered under this Agreement will be sufficient if in writing, and if delivered personally, sent by a nationally recognized overnight courier service, or sent by certified mail, return receipt requested and postage prepaid, to the parties at the following addresses:

|  |  |
|---|---|
| If to Employer: | BayCare Medical Group, Inc.<br>Attention: Chief Medical Officer<br>300 Park Place Blvd., Suite 170<br>Clearwater, Florida 33759 |
| With a copy to: | BayCare Health System, Inc.<br>Attn: Legal Services Department<br>2985 Drew Street<br>Clearwater, Florida 33759 |
| If to Physician: | Tara Loux, M.D.<br>6920 SW 44th Street, Apt. 105<br>Miami, Florida 33155 |
| With a copy to: | James A. Schmidt, Esq.<br>777 S. Harbour Island Blvd., Ste. 215<br>Tampa, Florida 33602 |

Any notice delivered in person will be deemed delivered on the date of personal delivery. Any notice sent by overnight courier service will be deemed delivered when received or in any event not later than one (1) day after deposit with such overnight courier service. Any notice sent

by certified mail will be deemed delivered when received or in any event not later than five (5) days after deposit in the United States mail, with proper postage. Any party wishing to change such party's address from that set forth in this Section may do so by delivering written notice in compliance with the provisions of this Section.

14. **Indemnification**.

a. **Indemnification by Physician**. Physician agrees to be fully responsible for, and agrees to indemnify, defend, and hold Employer harmless against, all claims, losses, liabilities, damages, injuries, or expenses (including reasonable attorney and paralegal fees and expenses) resulting from or arising in connection with: (i) any breach by Physician of Physician's obligations under this Agreement, or (ii) any claim made by a third party based upon any negligent or willful act or omission by Physician in connection with Physician's obligations and activities under this Agreement, but only to the extent that such claims, losses, liabilities, damages, injuries, or expenses are not covered by insurance.

b. **Indemnification by Employer**. Employer agrees to be fully responsible for, and agrees to indemnify, defend, and hold Physician harmless against, all claims, losses, liabilities, damages, injuries, or expenses (including reasonable attorney and paralegal fees and expenses) resulting from or arising in connection with: (i) any breach by Employer of Employer's obligations under this Agreement, or (ii) any claim made by a third party based upon any negligent or willful act or omission by Employer in connection with Employer's obligations and activities under this Agreement, but only to the extent that such claims, losses, liabilities, damages, injuries, or expenses are not covered by insurance.

15. **Merger**. This Agreement contains the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior agreements, contracts, and understandings, either written or otherwise, between the parties relating to it.

16. **Severability**. If any provision of this Agreement is deemed to be or declared invalid or unenforceable, the remainder of the Agreement will be valid and enforceable.

17. **Governing Law**. This Agreement will be construed under Florida law, without regard to Florida's conflicts of laws principles, and will inure to the benefit of and be binding upon the parties and as provided herein, their successors and assigns.

18. **Venue and Jurisdiction**. All disputes directly or indirectly related to this Agreement shall be litigated solely in the state and federal courts with jurisdiction over Hillsborough County, Florida and no other place, and Physician and Employer hereby agree to waive any jurisdictional, venue, or inconvenient forum objections to such courts. Each party waives all rights to any trial by jury in all litigation relating to or arising out of this Agreement.

19. **Attorneys' Fees and Costs**. In the event of a dispute arising under this Agreement, whether or not a lawsuit or other proceeding is filed, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs, including attorneys' fees and costs

incurred in litigating entitlement to attorneys' fees and costs, as well as in determining or quantifying the amount of recoverable attorneys' fees and costs.

20. **Modifications**. Except as set forth in Section 1(a) (Compensation) of this Agreement, no change, modification, or attempted waiver of any of the provisions of this Agreement or the Schedules attached hereto will be binding upon any party unless reduced to writing and signed by or on behalf of each of the parties to this Agreement. In the event Medicare, Medicaid, any third party payor, or any other federal, state, or local law, rule, regulation, or interpretation at any time during the Term of this Agreement prohibits, restricts, or in any way substantially changes the method or amount of reimbursement or payment for services rendered under this Agreement or the delivery of services contemplated hereunder, then the Agreement will be amended to provide for payment of compensation in a manner consistent with any such prohibition, restriction, or change.

21. **Force Majeure**. Neither party will be liable for any delay or failure in performance under this Agreement deemed to be a result, directly or indirectly, of any act of God, acts of civil or military authority, acts of public enemy, war, accidents, fires, explosions, earthquakes, floods, failure of public transportation, or any similar or dissimilar cause beyond the reasonable control of either party.

22. **No Third Party Beneficiaries**. This Agreement is entered into solely for the benefit of the parties hereto and their respective successors and assigns, which is subject to Section 24 (Assignment) of this Agreement, and is not entered into for the benefit of any other person or entity. Without limiting the generality of the foregoing, this Agreement will not be construed as establishing, with respect to any third party, any obligation, duty or standard of care or practice different from or in addition to whatever obligations, duties or practices may exist separate and apart from this Agreement.

23. **Waiver**. The waiver of either party of any breach of any covenant or condition of this Agreement is not a waiver of any subsequent breach of such covenant or condition or of the breach of any other covenant or condition contained in this Agreement. The failure or delay of either party to exercise or enforce any rights, powers, or remedies under this Agreement is not a waiver of such rights, powers, or remedies.

24. **Assignment**. Neither party may assign rights or delegate duties under this Agreement without the prior written approval of the other party; provided, however, that Employer shall be entitled to assign this Agreement to a parent, subsidiary, or affiliate (or pursuant to the acquisition or transfer of substantially all of the assets or ownership) of Employer and/or BayCare without the prior written consent of Physician. In the event of any assignment pursuant to this Section 24 (Assignment), the assignee shall be bound by all the terms and conditions of this Agreement in its entirety.

25. **Survival**. All covenants, agreements, representations, and warranties made herein and in any document or in any document or certificate delivered herewith pursuant to or in connection with this Agreement which, by their terms, require performance after termination or expiration of this Agreement, will survive the termination or expiration of this Agreement.

26.     **Construction**.  This Agreement will not be construed more strongly against either party, regardless of who may be deemed to have prepared it.

27.     **Style**.  Titles or captions contained in this Agreement are inserted as a matter of convenience and for reference only and in no way define, limit, extend, or describe the scope of this Agreement or the intent of any provision hereof.

28.     **Execution**.  This Agreement may be executed in one or more counterparts, each of which when so executed and delivered (whether by facsimile, e-mail, or other electronic means) shall be deemed to be an original, and all of which taken together shall constitute one and the same instrument.  A facsimile, PDF, or other electronic signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed), and shall be deemed an original signature for all purposes under this Agreement.  Any approvals or notices required to be provided by Employer to Physician under this Agreement may be provided by Employer via facsimile, e-mail, or other electronic means.

29.     **Schedules**.  The Schedules or documents attached or incorporated by reference herein form an integral part of this Agreement and are hereby incorporated into this Agreement wherever reference is made to them to the same extent as if they were set out in full at the point at which such reference is made.

IN WITNESS WHEREOF, the parties have set their hands and seals to this Agreement on the date set forth below.

**BAYCARE MEDICAL GROUP, INC.**

By: _Jee C. Kirkman MD_

Name: _Lee Kirkman_

Title: _Chief Medical Officer_

Date: _5/6/2015_

**TARA LOUX, M.D.**

By: _Tara Loux MD_

Date: _5.2.15_

## SCHEDULE 1(a)

## COMPENSATION

### ASSOCIATE PHYSICIAN SALARY AND BONUS

1.  **Definitions**.

   (a)     The following terms will have the meanings set forth below for purposes of this Schedule 1(a) (Compensation):

   (i)     "**Associate Physician**" means a licensed specialist, internist, pediatrician or family practitioner employed on a full-time basis by Employer who, as part of his or her employment agreement, is compensated on the basis of the Associate Physician Compensation Program.

   (ii)     "**Board**" means the Board of Directors of Employer.

   (iii)     "**Compensation Unit Value**" means the total of the collected revenues for Associate Physicians by specialty or division during the Fiscal Year, less average overhead by specialty or division during the Fiscal Year, divided by the number of Production Units performed by Associate Physicians by specialty or division during the Fiscal Year.

   (iv)     "**Employment Year**" means a one (1) year period commencing on the Commencement Date or any anniversary of the Commencement Date and terminating at the end of the calendar day immediately preceding the next anniversary of the Commencement Date.

   (v)     "**Fiscal Year**" means Employer's fiscal year.

   (vi)     "**Income Measure**" means the number of Production Units performed by Physician for Employer's patients during an Employment Year multiplied by the Compensation Unit Value for the Most Recent Fiscal Year.

   (vii)     "**Member Physician**" means a Physician employed by Employer who as part of his or her employment agreement is compensated in accordance with the Member Physician compensation program.

   (viii)     "**Most Recent Fiscal Year**" means Employer's Fiscal Year that ends during any Employment Year. In the event of any partial Employment Year that ends before the overlapping Fiscal Year, the Most Recent Fiscal Year means the Fiscal Year that ended immediately before such Employment Year.

   (ix)     "**Production Units**" means the sum of the total work component relative value units, as designated by the Centers for Medicare and Medicaid Services ("**CMS**") for the current federal fiscal year or through another appropriate methodology or fiscal year, for included services which are personally performed by the Physician, excluding any ancillary

services (e.g. lab tests, x-rays, physical therapy services provided by others, ordered medications and injections (except procedure type injections personally provided), special services and reports, and services provided at no charge or subsequently adjusted to reflect "fee forgiveness").

(x) "**Salary**" means the annual base salary paid to Physician by Employer each year during the Term of this Agreement, beginning with the Commencement Date, which is subject to all applicable city, state, federal and other withholding taxes, and paid in equal bi-weekly or more frequent installments, or otherwise in accordance with the policies and procedures of Employer as they may be changed from time to time by Employer in its sole discretion.

(xi) "**Targeted Income**" means Physician's Target Productivity multiplied by the Compensation Unit Value for the Most Recent Fiscal Year.

(xii) "**Target Productivity**" means the comparable productivity level for a physician of the same specialty at a comparable salary to Physician's Base or Annual Salary. Physician's Target Productivity for the first Employment Year is five thousand eight hundred thirty (5,830) Production Units, Physician's Target Productivity for the second Employment Year is six thousand seven hundred twenty-five (6,725) Production Units, and Physician's Target Productivity for the third Employment Year is six thousand nine hundred (6,900) Production Units.

(xiii) "**Total Physician Compensation**" means the sum of the Physician's Salary, Production Bonus, Quality Bonus, Signing Bonus, and Relocation Expenses paid by Employer to Physician on an annual basis pursuant to this Agreement.

(b) All other defined terms not defined herein will have the meanings prescribed by the Agreement to which this Schedule 1(a) (Compensation) is appended.

2. **Salary**. During the first Employment Year of this Agreement, Physician's Salary will be Five Hundred Seventy-Five Thousand and No/100 Dollars ($575,000.00). During the second Employment Year of this Agreement, Physician's Salary will be Six Hundred Thousand and No/100 Dollars ($600,000.00). During the third Employment Year of this Agreement, Physician's Salary will be Six Hundred Twenty-Five Thousand and No/100 Dollars ($625,000.00).

3. **Production Bonus**. If the number of Production Units billed by or on behalf of Employer for Physician's services during any Employment Year exceeds the cumulative Target Productivity, Physician will receive a bonus ("**Production Bonus**") within ninety (90) days of the end of such Employment Year, even if Physician is not then employed by Employer or the Employment Agreement has been terminated for any reason (including for breach by Physician). The Production Bonus shall equal one hundred percent (100%) of the cumulative Income Measure in excess of one hundred percent (100%) of cumulative Targeted Income. For any Employment Year in which Physician is employed for less than twelve (12) full months or performs services under the Agreement for less than twelve (12) months due to unpaid leave, excluding excused leave and vacation allowed in accordance with the Agreement, taken in

accordance with the policies of Employer, proper adjustments will be made in the calculations under this Section to fairly prorate or compute Physician's Production Bonus.

4.     **Achievement of Quality Improvement Goals**.  If Physician is employed by Employer on or before July 1 of the applicable calendar year, and to the extent that BayCare provides quality bonus funding to Employer, Employer intends to pay a quality bonus to Physician up to Ten Thousand and No/100 Dollars ($10,000.00) annually for the demonstrated achievement of quality goals in the delivery of medical services to Employer's patients ("**Quality Bonus**").  The actual Quality Bonus paid will be calculated based on Physician's achievement of "Quality Improvement Goals," which shall be determined by Employer on an annual basis and provided to Physician in writing.

(a)     Employer shall pay the Quality Bonus at the end of each fiscal year and the amount may be pro-rated based upon the number of days that Physician was employed, beginning on the Commencement Date.

(b)     Employer shall pay the Quality Bonus within ninety (90) days of Employer's receipt of reports from BayCare, if Physician is then employed by Employer.

5.     **Salary Adjustment**.

(a)     **First Employment Year**.  If the number of Production Units performed by Physician for Employer's patients in the first Employment Year is less than fifty percent (50%) of Target Productivity, a Salary adjustment may be made for the immediately following Employment Year by reducing Physician's Salary (as determined pursuant to Section 2 (Salary) above) by an amount not to exceed ten percent (10%) of said Salary, subject to the limitations of Section 9 (Fair Market Value) below.

(b)     **Second Employment Year**.  If the number of Production Units performed by Physician for Employer's patients in the second Employment Year is less than seventy-five percent (75%) of Target Productivity, a Salary adjustment may be made for the immediately following Employment Year by reducing Physician's Salary by an amount not exceed ten percent (10%) of said Salary, subject to the limitations of Section 9 (Fair Market Value) below.

(c)     Notwithstanding the foregoing, Physician's Salary will not be adjusted pursuant to this Section (Salary Adjustment) provided Physician has fully supported Employer, Health Care Facility, and BayCare by participating in the following: on call coverage, quality improvement initiatives, and other functions as identified in Schedule 3(a) (Duties) of the Agreement.

6.     **Signing Bonus**.  Physician shall also receive a one-time sign-on bonus of Twenty Thousand and No/100 Dollars ($20,000.00) ("**Signing Bonus**"), payable within the later of thirty (30) days of the Effective Date of this Agreement or when credentialing is completed.  It is understood that should (i) this Agreement terminate for any reason prior to the Commencement Date, or (ii) Physician's employment terminate voluntarily or involuntarily, within the first three (3) years of Physician's employment with Employer, Physician agrees to repay the full, pre-tax Signing Bonus amount to Employer, pro-rated for the number of months remaining in the three

(3) year period (the "**Repayment Amount**"). If Physician's employment is terminated within the first three (3) years of Physician's employment with Employer, any final wages, including expenses and bonuses, due to Physician pursuant to the Agreement will be reduced and applied toward the Repayment Amount. In the event Physician's final wages do not cover the entire balance of the Repayment Amount, Physician will repay the remaining balance to Employer, due by the effective date of termination of the Agreement. Physician understands that Employer is required to report Signing Bonus payments on Physician's Form W-2 or Form 1099, as applicable, as part of gross income.

7.     **Relocation Expenses**.     Physician shall also receive a one-time reimbursement of relocation expenses of up to Ten Thousand and No/100 Dollars ($10,000.00) for reimbursable expenses associated with relocating to the Tampa Bay Area ("**Relocation Expenses**"). Upon submission of receipts and expense reports, Physician will be reimbursed for moving expenses that are deductible under the Internal Revenue Code and deemed appropriate solely by Employer. It is understood that should (i) this Agreement terminate for any reason prior to the Commencement Date, or (ii) Physician's employment terminate voluntarily or involuntarily, within the first twelve (12) months of this Agreement, the full, pre-tax Relocation Expenses amount paid to Physician by Employer will be recoverable in full by Employer and that upon employment separation any final wages, including expenses and bonuses, will be reduced and applied toward this Relocation Expense repayment. In the event Physician's final wages do not cover the entire balance of the Relocation Expenses, Physician will repay the remaining balance to Employer, due by the effective date of termination of the Agreement.

8.     **Member Physician Eligibility**. Physician shall be eligible to be designated as a Member Physician and to participate in the Member Physician compensation program at the end of the second Employment Year, which will become effective at the beginning of the quarter directly following the eligibility date. Member Physician designation will be contingent upon successful achievement of Target Productivity, adherence to the terms of the Agreement, and review and approval by Employer's "Physician Compensation Committee." In addition, it shall be subject to approval by the Board. If Physician does not meet Target Productivity at the end of the second Employment Year, Board may consider a recommendation to continue Physician's Associate Physician status for the following Employment Year.

9.     **Fair Market Value**.     Physician and Employer acknowledge that Total Physician Compensation must fall within the range of fair market value for Physician's specialty. As such, unless otherwise specifically approved in writing by BayCare's President/CEO (or his/her designee), Total Physician Compensation shall not exceed the ninetieth (90th) percentile of total cash compensation for Physician's specialty, as set forth in the then current Medical Group Management Association ("**MGMA**") Physician Compensation and Production Survey Table 1: Physician Compensation.

## SCHEDULE 3(a)

## DUTIES

Throughout the Term of this Agreement, Physician shall:

1. Obtain and legibly record a detailed medical history of the patient, including, but not limited to, the patient's chief complaint, present condition, individual history, and family history, which is appropriate for the patient's condition and treatment plan;

2. Perform an appropriate focused surgical examination consistent with the duties of a specialist;

3. Analyze reports and/or findings of tests and personal examinations in order to assess the medical condition of the patient, diagnose his or her injury or illness, and formulate a prognosis;

4. Prescribe pre- and post-surgical medication and treatment for the patient and recommend appropriate physical and dietary routines;

5. When and if needed, perform and/or supervise various invasive medical procedures, including, but not limited to, the injection of medications, inoculations, and vaccinations;

6. Perform such clinical procedures as are consistent with Physician's prior practice patterns and training;

7. Effectively communicate with patients and other health care staff to manage patient care;

8. Refer patients to other physicians, including, but not limited to, specialists and other health care providers, when and if needed;

9. Provide coverage of Employer's patients when other physician employees are unavailable;

10. Be available to provide call coverage at Employer's affiliates when requested by Employer;

11. Maintain appropriate records relating to all professional services rendered;

12. Use Employer's electronic medical record in accordance with the Policies;

13. Prepare all reports, claims, and correspondence necessary and appropriate to perform professional services, and ensure that such documentation is in compliance with federal and state regulations;

14. Timely report births, deaths, outbreaks of contagious diseases, and other information, as required by governmental authorities;

15. Participate in the selection of physicians, nurses, and/or other personnel, as requested by Employer;

16. Supervise physicians, nurses, and/or other personnel, as requested by Employer, by overseeing patient care responsibilities, providing training, assigning and directing work, appraising performance, addressing complaints, and resolving problems;

17. Participate in public health education programs, health screening programs, and other community outreach activities that Employer sponsors, as requested by Employer;

18. Attend professional conventions, post-graduate seminars, and professional societies, as requested by Employer;

19. Participate in Employer activities, programs, and initiatives, as requested by Employer;

20. Help Employer obtain and maintain accreditation, as requested by Employer;

21. Perform other duties assigned by Employer that are commensurate with professional services normally and customarily performed by a physician; and

22. Perform such administrative and managerial duties as Employer reasonably requires.

H:\SHARES\BayVista\Legal\Physician Contracting\Employment Agreements\HealthPoint\Loux\HMG_Loux_Physician Employment Agreement (SLC)_04.24.2015.docx